CALVIN LONG *vs.* THE STATE OF MARYLAND.

*Gift enterprises—Section* 185 *of Article* 27 *of the Code—
Lotteries—Unlawful regulation of Trade.*

The Act of 1886, ch. 480 (sec. 185 of Art. 27 of the Code of Public
General Laws,) provides that: "No person or body corporate
shall be permitted, either directly or indirectly, by agent or other-
wise, to barter, sell, trade, or to offer for barter, sale, or trade, by
any publication, or in any way, any wares, goods, or merchandise
of any description, in package or bulk, holding out as an induce-
ment for any such barter, sale, or trade, or the offer of the same,
any scheme or device by way of gift enterprises of any kind or
character whatsoever." HELD :

That this Act, by reason of its general terms, including as it does
all gift enterprises, those involving the element of chance, as
well as those that do not, is invalid, so far as it relates to gift
enterprises not involving chance.

In so far as the object of an Act is to protect the morals and
advance the welfare of the people, by prohibiting every scheme
and device bearing any semblance to lottery or gambling, it
undoubtedly will be a valid exercise of power.   But an Act
which declares that no person shall give away anything to a
purchaser of goods, wares, or merchandise as an inducement
to make the purchase, is a regulation of trade which is not only
unwise but unlawful.

APPEAL AS UPON WRIT OF ERROR, from the Criminal
Court of Baltimore.

The case is stated in the opinion of the Court.

The cause was argued for the appellant before ALVEY,
C. J., ROBINSON, IRVING, BRYAN, FOWLER, MCSHERRY,
and BRISCOE, J., and submitted on brief for the appellee.

*Benjamin Kurtz*, for the appellant.

The making of gifts, as an inducement to the sale of goods, by a scheme or device not contrary to the lottery law, is a harmless act, and cannot be made an offence by legislation. *Toledo, W. & R. Co. vs. City of Jacksonville*, 67 *Ill.*, 37, 40.

"If the distribution is a pure gift or bounty, and not in name or pretence merely, which is designed to evade the law—if it be entirely unsupported by any valuable consideration moving from the taker—there is nothing in this mode of conferring it which is in violation of the policy of any statute condemning lotteries or gaming." *Yellow-Stone Kit vs. State*, 88 *Ala.*, 196; *People vs. Gillson*, 109 *N. Y.*, 389; *Matter of Application of Jacobs*, 98 *N. Y.*, 98; *Cooley's Constitutional Limitations*, (5th Ed.) 446.

The law is unreasonable as being in restraint of trade. *Mayor, etc. of Baltimore vs. Radecke*, 49 *Md.*, 217; *Matter of Application of Jacobs*, 98 *N. Y.*, 98; *Wynehamer vs. The People*, 13 *N. Y.*, 396; *Ex parte Westerfield*, 55 *Cal.*, 550; *Pumpelly vs. Green Bay Co.*, 13 *Wall.*, 177; *Cooley on Constitutional Limitations*, (6th Ed.) 241–246; *Munn vs. Illinois*, 94 *U. S.*, 141.

*Wm. Pinkney Whyte*, *Attorney-General* for the appellee.

This Act is not unconstitutional and void, but is a legitimate and proper exercise of the State's power for the *protection of the morals of the people.* It is in aid of the police power of the State for the suppression of lotteries and the like. It is aimed directly at this evil. It was not passed in the interest of a class, but puts all persons on an equality. Such power is lodged with the Legislature of a State for the safety of the people. Its exercise by the State has frequently been recognized by the Supreme Court of the United States, and by this Court, as eminently proper in the preservation of the public health; in the protection of public morals and in regard to the safety of the people.

The right to pursue any business is always subordinate to the public good, and is subject to such restrictions, as in the judgment of the Legislature, may be necessary for the protection of society.

The Supreme Court, in *Dent vs. West Virginia*, 129 *U. S.*, 122, thus aptly describes the extent of this power, lodged with the State, in regard to the public health :

"The power of the State to provide for the general welfare of its people authorizes it to prescribe all such regulations, as in its judgment, will secure or tend to secure them against *ignorance* and *incapacity*, as well as deception and fraud." See also—*Minneapolis & St. Louis Ry. Co. vs. Beckwith*, 129 *U. S.*, 26; *Powell vs. Pennsylvania*, 127 *U. S.*, 678; *Mugler vs. Kansas*, 123 *U. S.*, 623.

These authorities have been recognized in this State in the *Oleomargarine Cases*, and in *Singer vs. State*, 72 *Md.*, 466, in which this Court said : "All agree that laws and regulations necessary for the protection of the health, morals and safety of society are strictly within the legitimate exercise of the police power."

This section of the Code comes within this legitimate exercise of the police power.

"Gift enterprise" and "prize package" business is a species of lottery. It is dependent on some formula of chance, and comes within the legal definition of lottery.

"Any scheme for the distribution of prizes, by lot or chance, by which one, on paying money to another, obtains a token, which entitles him to receive a larger value or nothing, as some formula or chance may determine, is a lottery." *State vs. Boneil*, 8 *South. Rep.*, 298; *Dunn vs. The People*, 40 *Ills.* 465; *Commonwealth, ex rel. vs. The Sheriff*, 10 *Phila.*, 203; *Holman vs. The State*, 2 *Texas App.*, 610; *Chavannah vs. The State*, 49 *Ala.*, 396; *Commonwealth vs. Wright*, 137 *Mass.*, 250; *Hull vs. Ruggles*, 65 *Barb.*, 432; *State vs. Clarke*, 33 *N. H.*, 329; *State vs. Bryant*, 74 *N. C.*, 207; *Randle vs. The State*, 42 *Texas*, 580.

FOWLER, J., delivered the opinion of the Court.

The plaintiff in error, Calvin Long, was indicted in the Criminal Court of Baltimore for violating the Act of Assembly of 1886, chapter 480, which has been codified as section 185 of Article 27 of the Code, and which reads as follows :

"No person or body corporate shall be permitted, either directly or indirectly, by agent or otherwise, to barter, sell, trade, or to offer for barter, sale or trade, by any publication, or in any way, any wares, goods or merchandise of any description, in package or bulk, holding out as an inducement for any such barter, sale or trade, or the offer of the same, any scheme or device by way of gift enterprises of any kind or character whatsoever."

The indictment contained two counts—the first charging that the said Long unlawfully sold certain merchandise, holding out as an inducement for such sale, a certain scheme and device, by way of gift enterprise; and the second, that he kept a certain place or house for the purpose of selling lottery tickets.   At the trial the State abandoned the second count, relating to the sale of lottery tickets, and elected to stand upon the first count. The plaintiff in error then demurred to the indictment upon the ground that the Act of Assembly of 1886, chapter 480, codified as above mentioned, upon which the first count is based, is void.   This demurrer was overruled, and, having been duly tried and convicted, said Long appealed to this Court from the rulings of the Criminal Court as to the admissibility of certain testimony.   *Long vs. State,* 73 *Md.,* 527.   We affirmed the ruling of the lower Court and remanded the case for further proceedings.   A final judgment having been entered a writ of error was sued ont, assigning a number of errors.   All of them, however, present the same question, namely, whether the Act referred to is a valid exercise of legislative power.

Long vs. State.

This is the only question here presented.  It was not before us on the former appeal, for we then assumed that the Act was valid.  The legislation we are considering is one of a class of laws which have been enacted in almost all the States, in order, if possible, to prevent lotteries and gambling from entering into the ordinary transactions of life.  We find many cases, some of them being referred to by the Attorney-General in his brief, illustrating the necessity of such laws to restrain the introduction into mercantile transactions of lottery schemes and gambling devices like the one the plaintiff in error used in his business.  We said on the former appeal that such a device had not even the merit of originality, and it undoubtedly violates the provisions of our Code prohibiting lotteries "and all devices and contrivances designed to evade" said provisions.  The ingenuity and fertility of invention which has been exercised in efforts to evade such laws would, no doubt, win success in legitimate lines of business.

It would unduly prolong this opinion to review the many cases referred to upon the briefs.  All of those relied upon by the State are cases in which there was an indictment under the laws prohibiting lotteries, and in which it was held the several devices or contrivances adopted involved chance.  The case of *People vs. Gillson*, 109 *N. Y. Rep.*, 389, is the one chiefly relied upon by the plaintiff in error.  We will consider it presently.

In *Hull vs. Ruggles*, 56 *N. Y. Rep.* 424, the exigency of the case required the Court to determine and define what is a lottery, and they laid down this definition : "Where a pecuniary consideration is paid, and it is determined by lot or chance, according to some scheme held out to the public, what and how much he who pays the money is to have for it, that is a lottery."  *Worcester's* definition is : "A game of hazard in which small sums are ventured for the chance of obtaining greater value."

And the definition adopted by the State in this case is not materially different from the above. "Any scheme for the distribution of prizes by lot, or which one on paying money to another obtains a token, which entitles him to receive a larger value or nothing as some formula of chance may determine, is a lottery." In one respect, we think all of these definitions are too narrow to cover some of the modern devices resorted to in order to evade the lottery laws, and that whether the consideration paid or given for the token, or chance to win something, generally called a "prize" consists of money or any other thing of value makes no difference.

An examination of the many cases on this subject will show that it is very difficult, if not impossible, for the most ingenious and subtle mind to devise any scheme or plan, short of a gratuitous distribution of property, which has not been held by the Courts of this country to be in violation of the lottery or gaming laws in force in the various States of the Union.

In the case of *Yellow-Stone Kit vs. State*, 88 *Ala.*, 196, (1888,) the Court uses this language: "If the distribution is a pure gift or bounty, and not in name or pretence merely, which is designed to evade the law,—if it be entirely unsupported by any *valuable consideration* moving from the taker,—there is nothing in this mode of conferring it which is violative of the policy of our statutes condemning lotteries or gaming."

It is apparent, however, that the giving away of property without consideration, whether by lot or otherwise is not in itself an evil, and certainly not such an evil as requires prohibition by law at the present day.

The case referred to—that of the *People vs. Gillson*, decided by the Court of Appeals of New York in 1888—arose upon the question of the validity of an Act of the Legislature of that State, which provided that: "No person shall sell, exchange or dispose of any article of

Long *vs.* State.

food, or offer or attempt to do so, upon any representation, advertisement, notice, or inducement that any thing other than what is specifically stated to be the subject of the sale or exchange, is or is to be delivered or received * * * as a gift, prize, premium or reward to the purchaser." It was held that "By the provisions of this Act, a man owning articles of food which he wishes to sell or dispose of is limited in his powers of sale or disposition. A liberty to adopt or follow for a livelihood a lawful pursuit, and in a manner not injurious to the community, is certainly infringed upon, limited, perhaps weakened or destroyed, by such legislation."

"This law," says the New York Court, "interferes with the free sale of food, for the condition is imposed that no one shall sell food, and at the same time, and as part of the transaction, give away any other thing."

These remarks apply with great force to our own Act, which prohibits, as we have seen, in connection with any sale of goods, wares or merchandise, *"any scheme or device by way of gift enterprises of any kind or character whatsoever."*

This broad and sweeping language would seem to include not only a lottery in which a valuable consideration is given for the chance to win a prize, but also a gratuitous distribution not involving the element of chance. The words "gift enterprises," so far as we have ascertained, have never been judicially defined.

The *Century Dictionary* gives the only definition of the words we have been able to discover, as follows: "A business, as the selling of books or works of art, the publication of a newspaper, etc., in which presents are given to purchasers as an inducement."

It was contended on the part of the State that the Act of 1886, comes within the legitimate exercise of the police power, and that "gift enterprises" is a species of lottery, because the distribution in all gift enterprises is depen-

Long *vs.* State.

dent on some formula of chance. But we do not think the words *"gift enterprise"* necessarily imply a scheme involving chance. In so far as the object of an Act is to protect the morals and advance the welfare of the people by prohibiting every scheme and device bearing any semblance to lottery or gambling, it undoubtedly would be a valid exercise of power, and the citation of authorities is not necessary to sustain a proposition so well settled.

But the Act in question goes further, and in effect, as we construe it, declares, as did the New York statute, which was held invalid in the case referred to, that no person shall give away any thing to a purchaser of goods, wares or merchandise, as an inducement to make the purchase.

Such a regulation of trade is' in our opinion, not only unwise, but unlawful, and unlawful because it is necessary neither for the health, safety, nor welfare of the people, and which in its operation would be oppressive and burdensome. *People vs. Gillson*, 109 *N. Y.*, 389; *Matter of Application of Jacobs*, 98 *N. Y.*, 98; *Butchers' Union Co. vs. Crescent City Co.*, 111 *U. S.*, 746; *Toledo, W. & W. R. W. Co. vs. City of Jacksonville*, 67 *Ill.*, 46.

It must always be conceded, of course, that the State can, through its Legislature, by the legitimate exercise of its police powers pass "laws and regulations necessary for the protection of the health, morals, and safety of society;" *Singer vs. State*, 72 *Md.*, 466; yet such regulations must be reasonable, and "what are reasonable regulations, and what are subjects of police power, must be necessarily judicial questions." *Toledo, W. & W. R. W. Co. vs. City of Jacksonville*, 67 *Ill.*, 40.

It follows that the Act of 1886, ch. 480, by reason of its general terms, including as it does all gift enterprises, those involving the element of chance, as well as those that do not, is invalid so far as it relates to gift enter-

prises not involving chance, and that the judgment of the Criminal Court of Baltimore must be reversed.

*Judgment reversed, and*
*cause remanded.*