## HUMES v. CITY OF LITTLE ROCK.

(Circuit Court, W. D. Arkansas, E. D. November 2, 1898.)

**1. LICENSES—POWER OF CITY TO IMPOSE LICENSE TAX—GIFT ENTERPRISES.**

In Sand. & H. Dig. Ark. § 5132, authorizing cities to tax, license, and suppress certain occupations named, among them "gift enterprises," such term means schemes for the distribution of property into which some element of chance enters, and the statute does not confer power on a city to impose a license tax upon the occupation of selling trading stamps to merchants, which are given by them to cash customers as a premium, and redeemed by the seller in merchandise at their face value in whatever sums presented by such customers.

**2. SAME—CONSTITUTIONALITY OF ORDINANCE—OCCUPATION OF SELLING TRADING STAMPS.**

The selling of trading stamps, redeemable by the seller in merchandise at their face value whenever presented, to merchants, to be given by them to cash customers as a premium, is a lawful and legitimate vocation, not injurious to the public, and a city ordinance imposing a license tax on such occupation of $50 per week is void as unreasonable and an infringement upon the constitutional liberty of the citizen.

**3. JURISDICTION OF FEDERAL COURTS—AMOUNT IN CONTROVERSY.**

In a suit to enjoin the enforcement of an ordinance imposing a license tax on complainant's business, alleged to be prohibitory, the amount in controversy, for the purpose of determining the jurisdiction of a federal court, is the value of such business.

**4. EQUITY JURISDICTION—FEDERAL COURTS—SUBSTANTIVE RIGHT GIVEN BY STATE STATUTE.**

The Arkansas statute (Sand. & H. Dig. § 3778), authorizing an injunction against all unauthorized taxes or assessments by counties, cities, or other local tribunals, boards, or officers, does not merely affect the remedy, but gives a substantive right, which may be enforced on the equity side of a federal court.

In Equity. Suit for injunction. On final hearing.

138 F.—59

Rose, Hemingway & Rose, for complainant.

W. J. Terry, City Atty., W. S. McCain, and Jacob Trieber, for defendant.

WILLIAMS, District Judge.   The city of Little Rock has passed the following ordinance:

"An ordinance for the better regulating the license on gift enterprises.

"Be it ordained by the city council of the city of Little Rock:

"Section 1. That it shall be unlawful for any person, firm or corporation to engage in, exercise or pursue the avocation, business or enterprise of selling, giving away, distributing or otherwise disposing of periodical tickets or premium stamps, without first having obtained and paid for a city license therefor from the proper city authorities, as provided in the next section.

"Sec. 2. Every person, firm or corporation engaging in, exercising or pursuing the avocation, business or enterprise of selling or giving away, distributing or otherwise disposing of periodical tickets or premium stamps shall pay a license of fifty dollars per week in advance.

"Sec. 3. Whosoever shall engage in, exercise or pursue the avocation, business or enterprise of selling or giving away, distributing or otherwise disposing of periodical tickets or premium stamps without having first obtained and paid for the same as above provided shall be deemed guilty of a misdemeanor, and upon conviction shall be fined in any sum not to exceed twenty-five dollars for the first offense, fifty dollars for the second offense and fifteen dollars for each subsequent violation of this ordinance, and each day which said ordinance may be violated shall be a separate offense."

The plaintiff, alleging that the license demanded is prohibitive in its amount, and that the ordinance was passed for the purpose of suppressing his business, has brought suit for an injunction, and a temporary restraining order has been issued.   It is conceded that the bill accurately describes the business carried on by him, and the case comes on for final hearing upon its allegations.

The method of conducting the complainant's scheme is thus described in the bill:

"He [complainant] solicits the merchants of the city to patronize him, and to such as agree to do so he issues stamps, for which they pay.   He issues a great number of copies of a little book in which these stamps can be pasted, and which contains a directory, giving the name and address and the occupation of all the merchants who agree to patronize him.   He sends out a large number of canvassers, who place copies of the book in every household in the city, and explain to every one the advantages of patronizing the merchants holding the stamps.   When a person purchases goods from a merchant who does business with your orator, and pays cash for the amount of his purchase, or pays his bill therefor promptly on first presentation at the end of the month, he is entitled to demand and receive stamps issued by your orator in exact proportion to the amount of his purchase.   Your orator has a store in the said city, in which he keeps a stock worth several thousand dollars, embracing a vast assortment of useful and ornamental articles for the home, varying in cost from mere trifles to things of considerable expense; and the persons receiving these stamps can, whenever they desire, present them at your orator's store, and receive in exchange therefor any article which they may select of the value of the stamps surrendered."

1. It will be observed that no element of chance enters into the plan.   There are no drawings; no opportunities to win a larger sum upon a wager of any kind.   The stamps have the same purchasing power in the hands of every one, and every one has the same right of selection among the complainant's stock.   The question presented by the bill is, has the city council the power to license or suppress an enterprise of this character?

That a city can only pass such ordinances as its charter authorizes is the established law of the state. Tuck v. Waldron, 31 Ark. 465; Ex parte Martin, 27 Ark. 467; Geotler v. State, 45 Ark. 454. Hence it is necessary to inquire under what statute this ordinance was adopted, and we find that section 5132 of Sandels and Hill's Digest authorizes cities to tax, license, and suppress a number of occupations, all of them either necessarily or probably detrimental to public health or morals, and among them "gift enterprises." No definition of the term is given, and we are therefore compelled to look elsewhere to ascertain its meaning.

So far as our researches, aided by the industry of counsel, have enabled us to discover, the term has been judicially defined only in one case (Lohman v. State, 81 Ind. 15), where the court holds that it means "a scheme for the division or distribution of certain articles of property, to be determined by chance, among those who have taken shares in the scheme." This definition has been approved by Anderson and Black in their law dictionaries, and impresses us as correct. There is nothing immoral in a gift, and, indeed, giving is often to be commended. It is not likely, at least in our time, to grow to such dimensions as to constitute an evil threatening the well-being of society. To be pernicious, a gift must be a mere cover for a lottery, and the evil company in which "gift enterprises" are found in the statute indicates that it is the gifts of fortune that are referred to. The Legislature was apparently apprehensive lest the term "lottery" should be held to apply only to cases where money was at stake, and added gift enterprises to cover all other similar devices where articles of property were disposed of by chance. It is apparent that such devices are highly pernicious, and they are plainly within the legislative intent.

The statute having given no definition of what it means by "gift enterprise," we do not feel privileged to ignore the only judicial definition that the term has received, particularly when it has been accepted by the two latest compilers of legal dictionaries. The law is sufficiently uncertain without our making it more so by differing from the only existing authorities. We therefore conclude that "gift enterprises," as used in the statute, imply an element of chance, and that, as no such element is to be found in the plaintiff's scheme as described in the bill, it does not fall within the terms of the enactment, and the defendant has no power either to license or suppress it.

We have not overlooked the able decision of the Supreme Court of the District of Columbia in Lansburgh v. District of Columbia, 11 App. Cas. 512. But that case is clearly distinguishable from this. The act of Congress governing the District prescribes what is meant by gift enterprises, and its definition precisely covered the trading stamp concern. That definition is not binding here. It may be that Congress defined the kind of business that it intended to reach by the term "gift enterprises," because it knew that the term in its ordinary acceptation would have a more restricted meaning, just as in the new bankrupt act many terms are defined in the opening section as applying to things that would not otherwise

be included. Then, too, the court in that case lays stress on the fact that the holder of the stamps could get nothing unless he accumulated stamps representing purchases to the extent of $99, and, as few did that, it was held that the uncertainty of ever getting anything on the stamps introduced an element of chance. No such element exists in the case at bar, as it is alleged that every holder of stamps, however small an amount, is entitled to a premium proportioned to his holdings.

2. Nor, if we are in error in this, do we conceive that it should make any difference in our decision. The freedom of labor is perhaps the most sacred of all those that are guarantied by the national and state Constitutions. A man has the right to earn his livelihood and support his family by following any vocation not harmful to society. It is not sufficient that it may seem useless to the court. Things that are useless to one man are articles of prime necessity to another. To be within the legislative power of suppression, an occupation must be deleterious in its nature, or likely to become so, such as theaters and public balls, which, without police supervision, are apt to degenerate into indecency and riot. A large part of the pursuits of life are not of apparent utility, do nothing to secure food, shelter, or clothing to mankind, yet they assist some in that pursuit of happiness which the Declaration of Independence proclaims to be one of the inalienable rights of men.

Mr. Justice Bradley, in Live Stock Association v. Crescent City Company, 1 Abbott, C. C. 398, maintains this right in language which has been repeated by courts and jurists until it has become almost a legal classic:

"We may safely say that it is one of the privileges of every American citizen to adopt and follow such lawful industrial pursuits, not injurious to the community, as he may see fit, without unreasonable regulation or molestation. These privileges cannot be invaded without sapping the very foundation of republican government. A republican government is not merely a government of the people, but it is a free government. Without being free it is republican only in name, and not republican in truth, and any government which deprives its citizens of the right to engage in any lawful pursuit, subject only to reasonable restrictions as are reasonably within the power of the government to impose, is tyrannical and unrepublican."

In Powell v. Pennsylvania, 127 U. S. 692, 8 Sup. Ct. 1257, 32 L. Ed. 253, Mr. Justice Field is still more emphatic. He says:

"With the gift of life there necessarily goes to every one the right to do all such acts and follow all such pursuits, not inconsistent with the equal rights of others, as may support life and add to the happiness of its possessor. The right to pursue one's happiness is placed by the Declaration of Independence among the inalienable rights of man, with which all men are endowed, not by the grace of emperors or kings or by the force of legislative enactments, but by their Creator; and to secure them, not to grant them, governments are instituted among men."

And again in Butchers' Union Company v. Crescent City Company, 111 U. S. 757, 4 Sup. Ct. 652, 28 L. Ed. 585, the same great judge says:

"Among those inalienable rights, as proclaimed in the great document (the Declaration of Independence), is the right of men to pursue their happiness,

by which is meant the right to pursue any lawful business or vocation in any manner not inconsistent with the equal rights of others, which may increase their property or develop their faculties, so as to give them their highest enjoyments."

In Thomas v. Hot Springs, 34 Ark. 558, 36 Am. Rep. 24, the same distinction is made between harmful and innocent pursuits, and it was held that, while drumming for gaming houses and other iniquitous concerns could be prohibited, there is no power to suppress drumming for hotels, boarding houses, and other legitimate forms of business.

Among the cases in which this subject is discussed, In re Jacobs, 98 N. Y. 106, 50 Am. Rep. 636, and People v. Marx, 99 N. Y. 386, 2 N. E. 29, 52 Am. Rep. 34, are especially noteworthy; but the most conclusive presentation of the questions now before us is found in the able and exhaustive opinion of Judge Peckham, now Mr. Justice Peckham, in People v. Gillson, 109 N. Y. 389, 117 N. E. 343, 4 Am. St. Rep. 465. That involved a scheme precisely like this, save that the counter where the tickets were surrendered and the premiums were selected was in the same store, which seems to us an immaterial difference. He examines the question in every conceivable light, and holds that the New York statute forbidding such devices is an infringement of the constitutional liberties of the citizen. His opinion was followed by the Supreme Court of Maryland in Long v. State, 74 Md. 565, 22 Atl. 4, 12 L. R. A. 425, 28 Am. St. Rep. 268, and commends itself to our approval.

It may be that some persons may be led by complainant's scheme into foolishly buying more than they need, merely to get the stamps, and it is certain that in the end the premiums must be paid for by the public. But these are commercial, not judicial, considerations, and the remedy must be sought in the wisdom and experience of the citizen, not in the legislative interference. Ours is not a paternal government. The freedom of our institutions often permits the unwary to be entrapped, but the advantages derived from the resulting spirit of independence and enterprise far more than outweigh any evil that can follow the incidental abuses of liberty.

3. It is said that this court has no jurisdiction because the amount in controversy is insufficient. But it is alleged that the amount of the license is intentionally made prohibitory, and that, if it is enforced, the plaintiff will be driven out of business. The amount in controversy is therefore the value of that business, which is alleged to exceed $2,000. Moreover, the license imposed amounts to $2,600 per annum, and it is alleged that it would require more than a year to test the matter in the law courts. In the meantime the license would have to be paid, and the amount would exceed the amount required to give this court jurisdiction.

4. Then it is said that the remedy is at law. But the Arkansas statute (Sand. & H. Dig. § 3778) authorizes an injunction against all unauthorized taxes or assessments by counties, cities, or other local tribunals, boards, or officers; and it has been held by the Supreme Court of the United States in Cummings v. National Bank, 101 U. S. 157, 25 L. Ed. 903, that this statute does not merely affect the

remedy, but gives a substantive right that may be enforced on the equity side of this court.

Furthermore, it is alleged that the defendant's financial condition is such that a judgment against it cannot be enforced, so that if plaintiff should pay the license he could not recover it back. Under such circumstances, the remedy at law is not merely inadequate; it is no remedy at all.

The motion to dissolve the injunction is therefore denied.