LITTLE et al. v. TANNER, Atty. Gen. of State of Washington, et al.

(District Court, E. D. Washington, N. D.   July 24, 1913.)

No. 1,706.

**1.** COURTS (§ 303*)—JURISDICTION OF FEDERAL COURTS—"SUIT AGAINST STATE."

A suit against state officers to restrain the enforcement of a state statute which violates the Constitution of the United States is not a suit against the state, within the meaning of the eleventh constitutional amendment, and is within the jurisdiction of a federal court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 844, 844½; Dec. Dig. § 303.*

For other definitions, see Words and Phrases, vol. 7, p. 6778; vol. 8, p. 7809.]

**2.** COURTS (§ 343*)—PARTIES—JOINDER OF PLAINTIFFS.

Under new equity rule 38 (198 Fed. xxix, 115 C. C. A. xxix), which provides that, when a question is one of common or general interest to many persons, constituting a class so numerous as to make it impracticable to bring them all before the court, one or more may sue or defend for the whole, persons, each of whom is injuriously affected by a state statute alleged to be unconstitutional, may join in a suit to enjoin its enforcement.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 915, 916, 919, 920; Dec. Dig. § 343.*]

**3.** INJUNCTION (§ 114*)—PARTIES—JOINDER OF DEFENDANTS.

The Attorney General of Washington and the prosecuting attorney of a county are so far charged under the statutes with the execution of the criminal laws as to make them proper parties defendant to a suit to enjoin the enforcement of a state statute, the violation of which is punishable as a criminal offense.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 202–220; Dec. Dig. § 114.*]

**4.** INJUNCTION (§ 85*)—SUIT TO ENJOIN ENFORCEMENT OF CRIMINAL STATUTE.

A court of equity has jurisdiction of a suit to enjoin the enforcement of a statute which affects property rights, although its violation is punishable as a criminal offense.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 155, 156; Dec. Dig. § 85.*]

**5.** CONSTITUTIONAL LAW (§ 230*)—LICENSES (§ 7*)—EQUAL PROTECTION OF LAWS—TRADING STAMP ACT.

Act Wash. March 20, 1913 (Laws Wash. 1913, c. 134), which requires all persons, firms, or companies using trading stamps to pay a license tax of $6,000 per year, is void as in violation of the equality clause of the fourteenth constitutional amendment.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 687; Dec. Dig. § 230;* Licenses, Cent. Dig. §§ 7–15, 19; Dec. Dig. § 7.*]

In Equity.   Suit by John T. Little, August Stahlberg, Lawrence Ryan and William T. Oathout, partners as Ryan & Oathout, Joseph Schaick, George D. Purves, Harold L. Blake, Adolph Rensch, William B. Stone, Albert J. Ziv, William E. Thompson, Abraham H. Goldberg, Ed. Schimmel, Marie C. J. Bille, Carrie M. Noerenberg, Lena M. Royce, the Pearl Laundry Company, Charles E. Marr, Sam Langert and Sidney Kellner, copartners, Louis K. Lefevre and Elza K. Pearson, copartners, against W. V. Tanner, as Attorney General

of the State of Washington, George H. Crandall, Prosecuting Attorney of Spokane County, and E. W. Evenson, County Treasurer of Spokane County, Wash. On motion for preliminary injunction, and motions by defendants to quash and to dismiss bill. Motions to quash and dismiss denied. Motion for injunction granted.

Cohn & Rosenhaupt, of Spokane, Wash., Hughes, McMicken, Dovell & Ramsey, of Seattle, Wash., and Stroock & Stroock and Frank T. Wolcott, all of New York City, for plaintiffs.

W. V. Tanner, Atty. Gen., of Olympia, Wash., J. T. S. Lyle, Asst. Atty. Gen., of Olympia, Wash., George H. Crandall, Pros. Atty., of Spokane, Wash. (D. V. Halverstadt, of Seattle, Wash., of counsel), for defendants.

Before GILBERT, Circuit Judge, and WOLVERTON and RUDKIN, District Judges.

RUDKIN, District Judge. The act of the Legislature of the state of Washington, approved March 20, 1913, entitled "An act relating to the use and furnishing of stamps, coupons, tickets, certificates, cards, or other similar device, for or with the sale of goods, wares and merchandise, and providing a penalty for violation thereof," provides and declares as follows:

"Section 1. Every person, firm or corporation who shall use, and every person, firm or corporation who shall furnish to any other person, firm or corporation to use, in, with or for the sale of any goods, wares or merchandise, any stamps, coupons, tickets, certificates, cards, or other similar devices which shall entitle the purchaser receiving the same with such sale of goods, wares or merchandise to procure from any person, firm, or corporation any goods, wares, or merchandise, free of charge or for less than the retail market price thereof, upon the production of any number of said stamps, coupons, tickets, certificates, cards, or other similar devices, shall before so furnishing, selling, or using the same obtain a separate license from the auditor of each county wherein such furnishing or selling or using shall take place for each and every store or place of business in that county, owned or conducted by such person, firm or corporation from which such furnishing or selling, or in which such using, shall take place.

"Sec. 2. In order to obtain such license the person, firm, or corporation applying therefor shall pay to the county treasurer of the county for which such license is sought the sum of six thousand dollars, and upon such payment being made to the county treasurer he shall issue his receipt therefor which shall be presented to the auditor of the same county, who shall upon the presentation thereof issue to the person, firm, or corporation making such payment a license to furnish or sell, or a license to use, for one year, the stamps, coupons, tickets, certificates, cards, or other similar devices mentioned in section 1 of this act. Such license shall contain the name of the grantee thereof, the date of its issue, the date of its expiration, the town or city in which and the location at which the same shall be used, and such license shall be used at no place other than that mentioned therein.

"Sec. 3. No person, firm, or corporation shall furnish or sell to any other person, firm, or corporation to use, in, with, or for the sale of any goods, wares, or merchandise, any such stamps, coupons, tickets, certificates, cards, or other similar devices for use in any town, city or county in this state other than that in which such furnishing or selling shall take place.

"Sec. 4. Any person, firm, or corporation violating any of the provisions of this act shall be guilty of a gross misdemeanor."

Laws of 1913, c. 134.

"Every person convicted of a gross misdemeanor for which no punishment is prescribed in any statute in force at the time of conviction and sentence,

shall be punished by imprisonment in the county jail for not more than one year, or by a fine of not more than one thousand dollars, or by both."

Remington & Ballinger's Annotated Codes and Statutes of Washington, § 2267.

The plaintiffs are retail merchants residing in the city of Spokane, and use in their several lines of business stamps, coupons, tickets, certificates, and other devices which entitle the purchasers of goods, wares, or merchandise to procure from the vendor, or from some other person, firm, or corporation, goods, wares, or merchandise free of cost, as a premium or discount on the amount of their cash purchases. Such methods are now very commonly resorted to by merchants for the purpose of advertising and increasing the volume of their business. The nature of the different devices used, and the manner of their redemption, is not material here, as they are all admittedly controlled by the same general principles of law. The present suit was instituted to restrain the Attorney General of the state, the prosecuting attorney of Spokane county, and the county treasurer of Spokane county from enforcing the provisions of the above act as against the plaintiffs and all other persons similarly situated. The jurisdiction of this court is invoked on the ground that the act is violative of the Constitution of the United States and particularly of the fourteenth amendment, in that it deprives the plaintiffs of their property without due process of law, and denies to them the equal protection of the law. Equity jurisdiction is invoked to avoid a multiplicity of suits, and to prevent irreparable loss and injury to the business and property of the plaintiffs. The defendants appeared specially and interposed a motion to quash on the ground that this is in effect a suit against the state, and the court is therefore without jurisdiction, followed later by a motion to dismiss on the grounds (1) that there is a misjoinder of parties plaintiff, (2) that there is a misjoinder of parties defendant, (3) that several causes of action have been improperly united, (4) that the amended bill of complaint does not state facts sufficient to warrant the court in granting any relief whatever to the plaintiffs, (5) that the plaintiffs have a plain, speedy, and adequate remedy at law, and (6) that the court has no jurisdiction over the persons of the defendants or the subject-matter of the action.

[1] 1. The motion to quash and the sixth ground of the motion to dismiss are based on the assumption that this is a suit against the state. But assuming for the present that the act is violative of the Constitution of the United States, this assumption has no foundation in law. The Supreme Court of the United States has repeatedly held that a suit against state officers to restrain the enforcement or execution of a state statute which violates the Constitution of the United States is not a suit against the state, within the intent and meaning of the eleventh amendment. Ex parte Young, 209 U. S. 123, 159, 28 Sup. Ct. 441, 454 (52 L. Ed. 714, 13 L. R. A. [N. S.] 932, 14 Ann. Cas. 764), and cases there cited.

In the Young Case, the court said:

"The act to be enforced is alleged to be unconstitutional, and, if it be so, the use of the name of the state to enforce an unconstitutional act to the injury of complainants is a proceeding without the authority of and one

which does not affect the state in its sovereign or governmental capacity. It is simply an illegal act upon the part of a state official in attempting by the use of the name of the state to enforce a legislative enactment which is void because unconstitutional. If the act which the state Attorney General seeks to enforce be a violation of the federal Constitution, the officer in proceeding under such enactment comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character, and is subjected in his person to the consequences of his individual conduct. The state has no power to impart to him any immunity from responsibility to the supreme authority of the United States."

[2] 2. The objection to the joinder of the plaintiffs and the uniting of the several causes of action is apparently based on the theory that each plaintiff has a separate, distinct, and independent cause of action against the defendants, and that the several plaintiffs may not join in the same suit or unite their several causes of action in the same bill. Equity rule 38 (198 Fed. xxix, 115 C. C. A. xxix) provides as follows:

"When the question is one of common or general interest to many persons constituting a class so numerous as to make it impracticable to bring them all before the court, one or more may sue or defend for the whole."

This case would seem to fall within the spirit and equity of that rule.

[3] 3. What is meant by a misjoinder of parties defendant is not apparent. If there is any objection on that score, it would seem to be on the ground that no cause of action is stated against some of the defendants, and this much has been suggested in behalf of the Attorney General of the state. It is made the duty of the Attorney General:

"(1) To appear for and represent the state before the Supreme Court in all cases in which the state is interested; * * * (4) to consult and advise the several prosecuting attorneys in matters relating to the duties of their office, and when, in his judgment, the interests of the state require, he shall attend the trial of any person accused of a crime, and assist in the prosecution." Remington and Ballinger's Annotated Codes and Statutes of Washington, § 112.

"The prosecuting attorney of each county shall have authority, and it shall be his duty, subject to the supervisory control and direction of the Attorney General, to appear for and represent the state and the county of which he is prosecuting attorney, in all criminal and civil actions and proceedings in such county in which the state or such county is a party." Id. § 116.

Under these statutory provisions the Attorney General of the state is so far charged with the enforcement and administration of the criminal laws as to make him a proper, though perhaps not a necessary, party to a proceeding of this kind.

That the prosecuting attorney is charged with the enforcement of the criminal laws of the state is self-evident. Indeed, this is his principal duty. Furthermore, it appears from the correspondence and affidavits on file that that officer has threatened to enforce the provisions of the act in question against these plaintiffs in Spokane county, unless they take out a license or cease the use of so-called trading stamps or other similar devices.

It does not appear that the county treasurer is charged with any duty in connection with the enforcement of this act except to receive and receipt for moneys voluntarily paid to him. Why he should be

enjoined from so doing is not entirely clear to us; but these questions do not go to the merits of the controversy, and will be considered on the final hearing.

[4] 4. The remaining grounds of the motion to dismiss, namely, that the bill does not state facts sufficient to entitle the plaintiffs to the relief sought, and that they have a plain, speedy, and adequate remedy at law, may be considered together. It is no doubt true as a general rule that a court of equity has no jurisdiction to enjoin criminal proceedings; but there are well-recognized exceptions to that rule. As said by the court in Dobbins v. Los Angeles, 195 U. S. 223, 241, 25 Sup. Ct. 18, 22 (49 L. Ed. 169):

"It is well settled that, where property rights will be destroyed, unlawful interference by criminal proceedings under a void law or ordinance may be reached and controlled by a decree of a court of equity."

See, also, Ex parte Young, supra.

We are of opinion that this case falls within the exception to the general rule. While in form this is a suit to enjoin the enforcement of a criminal statute, it is in legal effect a suit to enjoin the exaction of an illegal license fee or the imposition of an illegal tax. And:

"It would seem that, if there were jurisdiction in a court of equity to enjoin the invasion of property rights through the instrumentality of an unconstitutional law, that jurisdiction would not be ousted by the fact that the state had chosen to assert its power to enforce such law by indictment or other criminal proceeding." Davis & Farnum Mfg. Co. v. Los Angeles, 189 U. S. 207, 218, 23 Sup. Ct. 498, 500 (47 L. Ed. 778).

When we consider the real object of this suit, the vast numbers affected by it, the severity of the penalties imposed, the unauthorized interference with legitimate business methods, and that goods now in original packages containing stamps and other devices are rendered practically valueless, the case seems to call peculiarly for the intervention of a court of equity. The motion to quash and the motion to dismiss are accordingly overruled.

[5] 5. The only remaining question in the case is the validity of the legislative act under consideration. The court is fully satisfied from a bare inspection of the act, without more, and without considering the affidavits on file, that it is and was intended to be prohibitive of the business methods against which it is directed. It is plainly manifest that no merchant could afford to pay the sum of $6,000 annually for the mere privilege of giving away trading stamps or allowing discounts on his cash sales. But if this were the only objection to the act it may be that the courts would be powerless to enjoin its execution. The power of taxation rests upon necessity, and is inherent in every independent state. It is as extensive as the range of subjects over which the government extends; it is absolute and unlimited, in the absence of constitutional limitations and restraints, and carries with it the power to embarrass and destroy. Postal Telegraph Co. v. Charleston, 153 U. S. 699, 14 Sup. Ct. 1094, 38 L. Ed. 871; McCray v. United States, 195 U. S. 27, 24 Sup. Ct. 769, 49 L. Ed. 78, 1 Ann. Cas. 561; Kehrer v. Stewart, 197 U. S. 60, 25 Sup. Ct. 403, 49 L. Ed. 663.

There is one limitation upon the power of the states in this regard, however, aside from the implied limitation that they may not tax the property or instrumentalities of the federal government, and that is the declaration of the fourteenth amendment that no state shall deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws. In speaking of this provision in Barbier v. Connolly, 113 U. S. 27, 31, 5 Sup. Ct. 357, 359 (28 L. Ed. 923), the court said:

·"The fourteenth amendment, in declaring that no state 'shall deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction ·the equal protection of the laws,' undoubtedly intended not only that there should be no arbitrary deprivation of life or liberty, or arbitrary spoliation of property, but that equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights; that all persons should be equally entitled to pursue their happiness and acquire and enjoy property; that they should have like access to the courts of the country for the protection of their persons and property, the prevention and redress of wrongs, and the enforcement of contracts; that no impediment should be interposed to the pursuits of any one except as applied to the same pursuits by others under like circumstances; that no greater burdens should be laid upon one than are laid upon others in the same calling and condition; and that in the distribution of criminal justice no different or higher punishment should be imposed upon one than such as is prescribed to all for like offenses."

It may be urged that the state may classify the subjects of taxation, but in the language of ·Mr. Justice Harlan, in Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 560, 22 Sup. Ct. 431, 439 (46 L. Ed. 679):

"The difficulty is not met by saying that, generally speaking, the state when enacting laws may, in its discretion, make a classification of persons, firms, corporations, and associations, in order to subserve public objects. For this court has held that classification 'must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis. * * * But arbitrary selection can never be justified by calling it classification. The equal protection demanded by the fourteenth amendment forbids this. * * * No duty rests more imperatively upon the courts than the enforcement of those constitutional provisions intended to secure that equality of rights which is the foundation of free government. * * * It is apparent that the mere fact of classification is not sufficient to relieve a statute from the reach of the equality clause of the fourteenth amendment, and that in all cases it must appear not only that a classification has been made, but also that it is one based upon some reasonable ground—some difference which bears a just and proper relation to the attempted classification—and is not a mere arbitrary selection' "—citing Gulf, Colorado & Santa Fé Railway v. Ellis, 165 U. S. 150, 17 Sup. Ct. 255, 41 L. Ed. 666; Cotting v. Kansas City Stock Yards Co., 183 U. S. 79, 22 Sup. Ct. 30, 46 L. Ed. 92.

Is there any just basis for the classification here attempted? We discover none. The legality of what is generally known as the trading stamp business has been very generally affirmed by the courts. See State v. Shugart, 138 Ala. 86, 35 South. 28, 100 Am. St. Rep. 17; Ex parte Drexel, 147 Cal. 763, 82 Pac. 429, 2 L. R. A. (N. S.) 588, 3 Ann. Cas. 878; Hewin v. Atlanta, 121 Ga. 723, 49 S. E. 765, 67 L. R. A. 795, 2 Ann. Cas. 296; Commonwealth v. Sisson, 178 Mass. 578, 60 N. E. 385; Long v. State, 74 Md. 565, 22 Atl. 4, 12 L. R. A. 425, 28 Am. St. Rep. 268; State v. Ramseyer, 73 N. H. 31, 58 Atl.

958, 6 Ann. Cas. 445; City of Winston v. Beeson, 135 N. C. 271, 47 S. E. 457, 65 L. R. A. 167; State v. Dodge, 76 Vt. 197, 56 Atl. 983, 1 Ann. Cas. 47; Young v. Commonwealth, 101 Va. 853, 45 S. E. 327; State v. Dalton, 22 R. I. 77, 46 Atl. 234, 48 L. R. A. 775, 84 Am. St. Rep. 818; People v. Gillson, 109 N. Y. 389, 17 N. E. 343, 4 Am. St. Rep. 465, as well as in numerous federal cases. But inasmuch as the Supreme Court of the state of Washington has declared that an act prohibiting the use of trading stamps is in violation of the Constitution of that state, we accept its decision as final and conclusive here. Leonard v. Bassindale, 46 Wash. 301, 89 Pac. 879.

The use of trading stamps and similar devices is neither more nor less than a legitimate system of advertising, and those who employ that system are entitled to the protection of the Constitution of the United States. As well might the Legislature classify separately those who advertise in the columns of the daily papers, by bill boards, or by electrical signs, and impose a tax upon them to the exclusion of others engaged in the same business or calling, who do not so advertise. The attempted classification is purely artitrary, is a manifest attempt on the part of the Legislature to accomplish by indirection what the Supreme Court of the state has declared it cannot accomplish directly, and is in violation of the equality clause of the federal Constitution. What we have here said is limited to merchants using trading stamps in connection with their business, for such are the only parties before the court.

Let the interlocutory injunction issue as prayed.