## Alexander T. Campau v. The City of Detroit.

*Charter of Detroit. Opening streets.* A resolution for the opening of a street can properly require an apportionment of the damages among the premises benefitted only in those cases in which such apportionment can be made under the Charter. But in the case of opening a street the Charter expressly provides that the damages shall be payable out of the City Treasury, and the means therefor raised with the general city taxes.

*Service of notice of the resolution.* The Charter requires the notice to be served "as soon as practicable," and return to be made at least six days before the time appointed for hearing. The resolution in this case was adopted August 8th, the hearing was fixed for September 18th, and the notice was served on the last of the parties September 9th. The return appearing to be made within the time required, and nothing appearing to show that an earlier notice was practicable, it was held that no question of law could arise in respect to it.

*Constitutional law.* Section 2 of Art. 18 of the Constitution requires a jury of twelve freeholders to determine the necessity of taking private property for public use, and the compensation therefor; and Section 15 of Art. 15 requires a jury in all cases where property is taken for public improvements in cities and villages. In 1859 an addition was made to Section 2 of Art. 18, exempting "the action of commissioners of highways" from its operation. *Held,* that this amendment cannot be held to include the municipal authorities of cities under the designation of "highway commissioners." The amendment designates certain officers, and it is not to be extended, by construction, to others on the ground, simply, that the duties performed by them are analogous.

*An act providing for a jury of six void. Waiver.* The Legislature of 1865 enacted an amendment to the Charter of the City of Detroit, by reducing the number of jurors to be summoned in a street-opening case to twelve, and the number to be sworn as jurors to six. These amendments were held to be unconstitutional and void; and in the present case, the Common Council having treated them as void, and acted upon the original provisions of the Charter, their action was sustained by the Court.

The parties cannot be held to waive the objection to a jury of six by not objecting; the provision is one for taking private property *in invitum,* and if it has no validity for that purpose, it cannot be important to consider whether the parties might consent to such a proceeding.

*Sections constituting a part of one proceeding construed together.* It was contended that sections 5 and 6, as amended, may stand, even if the provision for a jury of six is unconstitutional, since they provide for summoning twelve persons, and would be consistent with other provisions by which the whole number should be required to serve on the jury. *Held,* that these different provisions relate to the same subject matter, and provide the successive steps to be taken in perfecting a single proceeding, and must therefore stand together.—*Groesbeck v. Seeley,* 13 *Mich.* 329.

*Repeal, not effected by an unconstitutional provision.* Although the amendments cover the ground of the former provisions of the Charter, and there is at the conclusion of the amendatory act, which contains many other provisions, a clause repealing all acts and parts of acts inconsistent with its provisions, any portion of this latter act which is unconstitutional and void must be considered as a nullity, and cannot, therefore, on the ground of inconsistency, repeal any part of the former law. Nothing can come in conflict with a nullity.

CAMPAU v. THE CITY OF DETROIT.

*Repeal. Legislative intent.* It is competent for the legislature, in the same act, to repeal any former one within its purview, although every other provision in the repealing act was unconstitutional. The question is one of legislative intent, and it is only requisite that words should be used which show an intent to repeal, irrespective of the unconstitutional portions. In this case, it is not claimed that the repeal is accomplished without making use of the void provisions for the purpose.

*Heard April 25th. Decided May 1st.*

This was a common law *certiorari* to the Recorder's Court of Detroit, to remove the proceedings connected with the opening and extending of Russell street, in the City of Detroit, to this Court.

The following facts were agreed upon, as being the only ones necessary to present the questions to be raised:

The plaintiff is one of the heirs of Joseph Campau, deceased; the owners in fee of the property. The other heirs have declined to join in the writ, and it is prosecuted by him individually.

On the 8th of August, 1865, the Common Council passed a resolution in the words following, to wit:

"RUSSELL STREET.—Resolution for opening and extending Russell street.

Be it resolved by the Common Council of the City of Detroit, State of Michigan, that it is necessary to make the following public improvement, to wit: To open and extend Russell street, in the Sixth Ward of said city, northerly from its present northerly terminus, until it reaches the northerly limits of said city.

And the said Common Council do hereby declare, that they intend to take and use for the purpose of making said improvement, all that part of fractional section thirty-two, town one, south of range twelve east, lying southerly of the northerly limits of the said City of Detroit, and embraced within the easterly and westerly lines of Russell street, if the same be extended from its present terminus on a course north, twenty-six degrees west, sixty feet wide.

And the said Common Council do further declare, that they will, on the third Monday in the month of September, in the

year of our Lord one thousand eight hundred and sixty-five, at the hour of nine o'clock in the forenoon of that day, apply to the Recorder's Court, at the court room of said court in said city, for the drawing and empanneling of a jury to ascertain the necessity for using the property above described, as intended to be taken and used for the purpose of making said improvement, and to ascertain the just damages and compensation to which any person may be entitled if said improvement be made.

And the City Clerk of said city is hereby directed to cause this resolution to be published for four successive weeks before said third Monday of September, A. D. 1865, in *The Detroit Daily Free Press*, the official daily newspaper of said city, and the *Detroit Daily Advertiser and Tribune*, another daily newspaper published in said city. And the Superintendent of Police of said city is hereby directed, by himself, or by one of the Captains or Sergeants of Police under his direction, to serve notices of this resolution on the persons, and in the manner prescribed in section three, of chapter seven, of the Charter of said city."

The resolution was adopted August 8th, 1865, and approved August 15th, 1865.

This resolution was published in the newspapers, and for the period required by the Charter.

The time for appearing in the Recorder's Court and drawing the jury was fixed for the third Monday of September, 1865, being the 18th day of the month. As it appears by the return of the Sergeant of Police, the notices were served upon the persons who were described as the heirs of said Joseph Campau; on some, on the seventh, on some, on the eighth, and on some, (including the plaintiff,) on the ninth day of September, 1865.

The names of twenty-four freeholders were written down, as qualified to serve as jurymen, and were approved by the Court, and from these, twelve jurymen were selected and sworn, and acted.

The proceedings in the Recorder's Court are entitled, " In

the matter of opening Russell street." The damages found by the jury therein acting, as aforesaid, being in amount $107, were tendered to said heirs, respectively.

The report of the jury was filed on the second day of December, 1865, and was confirmed by said Recorder's Court.

*T. Romeyn,* for plaintiff in error.

The Court, on the return of this writ, has full power to review all legal questions decided by the inferior tribunal which affects rights of property. It is not confined to questions of jurisdiction.— 9 *Mich.* 111.

The plaintiff in error has not appeared in the proceedings. He has done nothing to waive his right to object to the jurisdiction of the Recorder's Court, or the constitutionality of its mode of procedure.

1. The proceedings in the Recorder's Court were void, for the want of the requisite resolution of the Common Council, and for the corresponding defect in the published notice.— *Charter,* §§ 2 *and* 3, *Ch.* 7.

There was no resolution to apportion and assess the damages. This is a fundamental and jurisdictional defect. The resolution was the foundation of the jurisdiction of the Court, and if it were substantially defective, the Court never acquired jurisdiction, and the proceedings are void.—2 *Doug. Mich.* 506, *and cases there cited;* 12 *N. Y.* 575.

2. This is a special proceeding, not according to the course of the common law, and the mode of exercising the jurisdiction, as prescribed by the statute, must be substantially pursued, or the Court loses its authority to act, although it might have once acquired jurisdiction over the subject matter.

The notice was not served until the ninth day of September. The law requires it to be done as soon as practicable. —*Sec.* 3 *of Chapter* 7. No reason for this delay is shown.

3. There is no law authorizing the assessment of the damages by a jury of twelve persons. It will not be denied that the right to take private property for public uses can be

exercised only by the Legislature, and in such mode as the legislative authority may prescribe.—2 *Kent's Com.*, 339, 340, *and notes.*

The charter of the city provided for this being done by a jury of twelve persons, in regard to opening streets.— *Chapter VII, L. of* 1857, *p.* 119.

The Legislature having provided this specific mode, saw fit in 1865 to alter it, substituting six jurors for twelve, and declaring that " all acts and parts of acts inconsistent with the provisions of this act are repealed."—*L. of* 1865, *p.* 680 *to* 683.

4. Conceding, for the present, that the Legislature had no right (under *sec.* 2 *of art.* 18 *of the Constitution*), to provide for taking private property for public use by the verdict of less than twelve jurors, yet they had a clear right to repeal the former law.

This they have done, and so far their action is valid.    The result is that there is no valid mode provided for the compulsory taking of property in the circumstances of this case.

A party may waive the constitutional right to a jury of twelve persons, (1*st Abbott's Dig. p.* 641, § 25), and so far, the act of 1865 may be carried into effect.    The remedy for this state of things rests with the Legislature, and not with the Courts.    If the Legislature intended to repeal their former enactment, so far their action is valid.    If they failed to substitute valid provisions, so far their action cannot be enforced.—1 *Mich.* 118 ; 3 *A. K. Marsh,* 70.

5. But it is not conceded that the Legislature had no constitutional right to make this change, because,

*a.* The second section of article 18 of the Constitution was amended in 1859, (*L. of* 1859, *p.* 1102), declaring that it should not apply to highway commissioners in the official discharge of their duties as such.

*b.* In cities and villages the corporate authorities represent highway commissioners.—*L. of* 1858, *p.* 38, &c.    And this is in accordance with the Charter of Detroit.— *Ch. VII.*

*c.* Under this constitutional amendment the duties and powers of highway commissioners have been greatly changed. —*L. of* 1861, 256; *L. of* 1865, 654.

*d.* It is submitted that, according to received principles of constitutional construction, this simplification of the system of opening streets may properly be applied to city authorities, acting as highway commissioners, and exercising the duties of such officers.—5 *Mich.* 257.

This view is strengthened by the fact, that there is no necessity, in the absence of positive constitutional enactment, to compel the Legislature in this class of cases to use a jury of twelve men.

*Wm. Gray,* for defendant in error.

1. It is contended that the resolution of the Council did not state that the jury were to apportion and assess the damages &c., upon the lots benefitted.

No assessment could be made upon lots benefitted by the opening of a street. The damages caused by such opening are paid by the city out of a general fund raised for that purpose.— *Chart.* § 11, *p.* 74.

In the case of alleys, it is different. In these cases the damages are assessed upon and paid by the adjacent lots.— *Chart.* § 12, *p.* 75.

Section two, relied upon by plaintiff in error, refers back to section one, which refers to the opening of both streets and alleys. In the case of an alley, the clause is properly inserted, as the jury do, in fact, assess &c.; but it would be simply absurd to insert it in the case of a street, when the jury could not assess. The clause in question was intended to apply only to alleys.

2. The notices were served six days previous to the time appointed for the hearing, and this complies with the Charter. —§ 3, *p.* 71.

3. The jurors were drawn in compliance with the Charter, as revised in 1861.—§§ 5, 6, 9.

CAMPAU v. THE CITY OF DETROIT.

In 1865 these sections were amended, by striking out the words "twenty-four" and "twelve," and inserting the words "twelve" and "six." The sections, thus amended, were re-enacted.—*L. of* 1865, *p.* 680 *and* 681.

This act reads as an amendatory one, and embraces other legal and valid amendments to the charter. The last section of the act is (*p.* 683): "All acts and parts of acts inconsistent with the provisions of this act are hereby repealed."

It is quite clear that the intent of the amendments to said sections 5, 6 and 9, was to reduce the number of jurors one-half, and thus reduce the expense of street openings. It is equally clear that such an amendment was unconstitutional.—See *Const. Art.* 18, § 2.

The sole question arising under this point is, were the original sections repealed by this act, or, the amendments being unconstitutional and void, does the act of 1865 stand as if these amendments were not therein contained?

*a.* It is perfectly evident that the intent was merely to amend, and not to absolute repeal.

*b.* The Legislature could not be presumed to intend a law which, failing, would annul the power to open streets; and the intent must govern.

*c.* A law may have some constitutional and some unconstitutional sections, and in such case, if they can be separated, the former are disregarded, and the latter enforced. In such case, the law is to be construed as if the unconstitutional sections never were inserted. In the present case, the constitutional provisions of 1861 were not repealed by the act of 1865, with unconstitutional amendments.—2 *Blackf.* 10; 3 *R. I.* 33, 64; 2 *Iowa,* 165; 10 *Mich.* 250, 253; 1 *Doug. Mich.* 123.

*d.* A general repealing clause in an act containing unconstitutional provisions does not repeal the prior law which is inconsistent or in conflict with the unconstitutional provision, for the act is to be construed as if it did not contain the unconstitutional provision.—6 *Wis.* 605, 615; 3 *Gray,* 476;

26 *Ala.* 165, 170; 19 *Cal.* 513, 22 *U. S. Dig.* 121, § 6; 11 *Wis.* 51; 2 *Parker's Crim. R.* 329.

*e.* Where the constitutional and unconstitutional provisions are so connected, as to warrant the belief that the Legislature would not enact the former alone, both fall.—2 *Gray,* 84; 13 *Wis.* 404.

Under the Michigan constitution the sole mode of amendment is by re-enacting the entire act or section as amended, and hence the act of 1865 must be construed, as if it merely amended by striking out twelve jurors, and inserting six jurors.

COOLEY J.

We do not think the resolution of the Common Council for the opening of Russell Street, is open to the objection made to it. The resolution can properly require an apportionment of the damages among the premises benefitted, only in those cases in which such apportionment can actually be made under the Charter. But in the case of opening a street the Charter expressly provides that the damages shall be payable out of the city treasury, and the means therefor raised with the general city taxes.—*Charter, ch.* 7, § 11.

Nor can the proceedings be held void because notice of the resolution was not served earlier. The resolution was adopted August 8th, and the hearing fixed for September 18th. Notice was served on the last of the parties September 9th. The Charter requires it to be served " as soon as practicable," and return to be made at least six days before the time appointed for the hearing. There is nothing before us to show that an earlier notice was practicable in this case, and no question of law can therefore arise in respect to it. The return appears to have been made within the time required. The principle question in the case is, whether there is now any provision of law under which streets can be opened in the City of Detroit. The question arises upon legislation which is supposed to be unconstitutional. The Constitution, *Art.* 18, § 2, requires that

"when private property is taken for the use or benefit of the public, the necessity for using such property, and the just compensation to be made therefor, except when to be made by the State, shall be ascertained by a jury of twelve freeholders, or by commissioners, etc." Another section requires a jury in all cases where property is taken for public improvements in cities and villages. *Art.* 15, § 15. An addition was made to this section, 2 of *Art.* 18, by amendment submitted to the people by the Legislature of 1859, which exempted "the action of commissioners of highways, in the official discharge of their duty as highway commissioners," from its operation. This amendment cannot be held to include the municipal authorities of cities under the designation of "highway commissioners." The amendment plainly refers to the officers designated elsewhere in the constitution and statutes by that name, and we are not warranted in extending it to include other officers or authorities on the ground, simply, that the duties performed by them are analogous. The question under the Constitution is therefore the same since the amendment, as before.

The Charter of 1857, *ch.* 7, §§ 5 and 6, required the summoning of twenty-four persons in these cases, of whom twelve should be sworn as jurors.—§ 9. But the Legislature of 1865 attempted to amend these three sections by reducing the number to be summoned to twelve, and the number to be sworn as jurors to six. The Common Council have treated these amendments as void. It is suggested for the plaintiff in error that they may all be sustained, on the ground that parties may waive their constitutional right to a jury of twelve, and whenever they do so, the verdict of six will be valid; but the provision is one for the taking of private property *in invitum*, and if it has no validity for that purpose, it cannot be important to consider whether parties might not lawfully consent that their property be taken in the mode which it undertook to establish. We think the Common Council correct in treating the provision for a jury of six as unconstitutional.

But it is further argued that sections five and six, as amended, may stand, even if the provision for a jury of six is unconstitutional; since those sections provide for summoning twelve persons, and would be consistent with other provisions by which the whole number should be required to serve on the jury. Whether the amended sections five and six, can stand by themselves, if the ninth fails, must depend upon whether by the amendatory law it is apparent that the Legislature intended them as inseparable parts of the same system, mutually dependent upon each other. Of this we think there is not the least doubt. The former provisions required the summoning of twice the number to be sworn, and the only change here made is in reducing the number of each one half. A single section of the Act of 1865 attempts to amend all three of these; and we know of no principle which would warrant us in selecting out portions of the section to stand unaffected by the constitutional infirmity of the remainder, when all parts relate to the same subject matter, and provide the successive steps to be taken in perfecting a single proceeding.—See *Quinlon v. Rogers,* 12 *Mich.* 168; *Groesbeck v. Seeley,* 13 *Id.* 329.

It only remains to consider whether the amendatory section being found invalid, the original provisions remain in force.

The Act of 1865 contained many other provisions, the validity of which is not disputed, so far as we are informed; and the last section repeals all acts and parts of acts inconsistent with its provisions. The plaintiff in error contends that, even if the sections which relate to a jury are invalid, the last section must still have the effect to repeal the original sections.

If the repealing clause had in express terms repealed certain acts and parts of acts by name, and the act had then gone further, and attempted to substitute unconstitutional provisions, the argument which has been made would be more plausible than it seems to us now. But the repealing clause here in question is distributive in its application to each section of the act, and neither in words, nor in apparent design undertakes to repeal any acts or parts of acts, except those which would

come in conflict with the provisions it attempts to substitute. The repeal was simply to displace all conflicting provisions, so that these could have full effect. But nothing can come in conflict with a nullity, and nothing is therefore repealed by this act on the ground solely of its being inconsistent with a section of this law which is entirely unconstitutional and void.— *Sullivan v. Adams*, 3 *Gray*, 476 ; *Shepardson v. Milwaukee and Beloit R. R. Co.*, 6 *Wis.* 605 ; *State v. Judge of County Court*, 11 *Id.* 50 ; *Tims v. State*, 26 *Ala.* 165.

The case of *Ely v. Thompson*, 3 *A. K. Marsh*, 70, is too blindly reported to enable us to determine whether it conflicts with the cases cited, and we have not the statute there in question before us, so that we may see in what terms the repeal was made ; but if the decision is what is claimed for it, it stands by itself, and we are unable to yield it our assent. But as reported it does not necessarily go to that extent ; and we quite agree with the learned Judge that it is competent for the Legislature in the same act to repeal any former one within its purview, although every other provision in the repealing act was unconstitutional. The question is one of legislative intent, and it is only requisite that words should be used which show an intent to repeal, irrespective of the unconstitutional portions. In this case it is not claimed that the repeal is accomplished without making use of the void provisions for the purpose.

We are therefore satisfied that the provisions for juries as they stood before the Act of 1865, remain unaffected by that act, and the proceedings must be affirmed.

The other Justices concurred.