PEOPLE, *ex rel.* ATTORNEY GENERAL, *v.* SPERRY & HUTCHINSON CO.

1. TRADING STAMPS—GIFT ENTERPRISES—STATUS.

The business of selling trading stamps to merchants to be distributed by them to customers purchasing goods and redeemable in articles by the seller of such stamps is, in the absence of prohibiting legislation, lawful.

2. CONSTITUTIONAL LAW—STATUTES—CLASS LEGISLATION—TRADING STAMP COMPANIES.

Act No. 206, Pub. Acts 1911 (3 Comp. Laws 1915, § 15055 *et seq.*), forbidding merchants, or dealers in merchandise, from issuing trading stamps with an agreed redemption value to their customers as evidence of trade, unless redeemable by themselves, and making it a crime punishable by heavy fine and imprisonment for third parties to

participate in the transaction by any arrangement to redeem them according to the terms under which they are issued, but allowing manufacturers to freely issue them, either redeemable by themselves or any other person, is invalid as making discriminating classification.[1]

3. SAME—OBJECT NOT EXPRESSED IN TITLE—FOREIGN CORPORATIONS.
  The act cannot be sustained as a valid limitation upon the corporate powers of a foreign trading stamp corporation under the reserved authority of the legislature to alter, amend or repeal corporate laws, because in section 9 it states that it is intended as a limitation upon the power "of any person, firm or corporation" doing business in the State, such object not being included in its title.

4. SAME—STATUTES—PARTIAL INVALIDITY—EFFECT.
  Where the unconstitutional portions of a statute are so interwoven with the whole purpose and operation of the statute as not to be fairly separable, the act should not be enforced in a form in which it was not passed, even though it contains a provision that it is to be held valid to the fullest extent possible, if found to be invalid in part.

Quo warranto proceedings by the people of the State of Michigan, on the relation of Roger I. Wykes, attorney general, against the Sperry & Hutchinson Company to oust defendant from doing business in this State in violation of Act No. 244, Pub. Acts 1911 (3 Comp. Laws 1915, § 15055 *et seq.*). Submitted January 20, 1916. (Docket No. 139.) Judgment of ouster denied September 27, 1917.

*Grant Fellows*, Attorney General (*Wykes, Dilley & Averill*, of counsel), for plaintiff.

*Alexander J. Groesbeck* (*Frank T. Wolcott*, of counsel), for defendant.

*Stevenson, Carpenter, Butzel & Backus* (*William L. Carpenter*, of counsel), for intervening customers of defendant.

[1]On constitutionality of prohibition against use of trading stamps, see note in 2 L. R. A. (N. S.) 588; 7 L. R. A. (N. S.) 1131; 30 L. R. A. (N. S.) 957; 49 L. R. A. (N. S.) 1123; L. R. A. 1917A, 433.

STEERE, J. This quo warranto proceeding was instituted to oust defendant from doing business in this State as a trading stamp company in violation of the provisions of Act No. 244, Pub. Acts 1911 (3 Comp. Laws 1915, § 15055 *et seq.*), entitled:

"An act to restrain and to prohibit gift enterprises, to prevent the issuing, selling or giving away of trading stamps, or of certificates, coupons, or any token or writing redeemable with or exchangeable, in whole or in part, for articles of merchandise or value as prizes, premiums or otherwise, by any firm, corporation or individual except as herein otherwise provided; to define what shall be treated as gift enterprises and trading stamps, and to fix the penalties for the violation of this act."

Defendant is a corporation organized under the laws of the State of New Jersey. Prior to the passage of this act it had paid the franchise fee and fully complied with all the requirements of Act No. 206, Pub. Acts 1901 (2 Comp. Laws 1915, § 9063 *et seq.*), prescribing conditions under which foreign corporations are admitted to do business in Michigan, and received a license, or certificate therefor, from the secretary of State. It was then and had been for some time prior thereto engaged in the business of furnishing to dealers and redeeming, when issued by them, trading stamps, or coupons, in the State of Michigan, and admittedly continued in that business up to the time of hearing in this case. Its defense is against the validity of the statute, which is claimed to be void because unconstitutional on various grounds, amongst which are, briefly stated, that it violates the due process of law and equal protection provisions of the fourteenth amendment of the Federal Constitution, impairs the obligation of contracts, prohibits legitimate advertising, describes defendant's business as a "gift enterprise" and contrary to the public policy of the State, although there is no element of chance or

gambling in it, prohibits defendant and others from engaging in an honest business not detrimental to public health, safety, morals, or the public welfare, imposes an excessive and confiscatory punishment for its violation, is discriminatory and unfair class legislation, and violates the provisions of our State Constitution that no law shall embrace more than one object, which shall be expressed in its title.

The not unfamiliar method of defendant's business as a trading stamp company is to act as an intermediary between the buyer and seller, or the merchant and his customers, by what it terms a "co-operative discount system," under which it contracts to furnish dealers in merchandise, for an agreed compensation, trading stamps redeemable at defendant's place or places of business in articles kept by it for that purpose, the claimed beneficent features of which, to the merchant and his customer, being that the former is enabled to thus advertise his business by offering trading stamps, in the nature of discounts, to the latter, who can then go to defendant's establishment and obtain in exchange without further cost some article of the value, or priced at, the amount represented by the stamp or stamps he produces.

The contract between defendant, called the "company," and the merchant, called the "subscriber," provides that the company will furnish the subscriber the use of its "S. & H. green trading stamps" at an agreed price and redeem them in specified articles of merchandise when presented by customers of the subscriber, who on his part agrees

"to offer to customers upon making purchases, and when accepted by them give as an evidence of cash trade, and only for redemption by said company, one of said stamps with each ten cents represented in the retail price of goods for which cash is paid, and not otherwise to procure, use or dispose of said stamps."

By this plan of operation it is contended there is a value given to and consideration for the stamps issued to customers, payable in merchandise, not contingent on any hazard or chance, or involving any characteristics of a lottery or gift enterprise. In support of this contention the following cases are cited: *State* v. *Shugart,* 138 Ala. 86 (35 South. 28, 100 Am. St. Rep. 17) ; *Humes* v. *City of Little Rock,* 138 Fed. 929; *Ex parte McKenna,* 126 Cal. 429 (58 Pac. 916) ; *City and County of Denver* v. *Frueauff,* 39 Colo. 20 (88 Pac. 389, 7 L. R. A. [N. S.] 1131, 12 Am. & Eng. Ann. Cas. 521) ; *In re Gregory,* 219 U. S. 210 (31 Sup. Ct. 143) ; *Territory of Hawaii* v. *Gunst & Co.,* 18 Haw. Rep. 196; *Long* v. *State,* 74 Md. 565 (22 Atl. 4, 12 L. R. A. 425, 28 Am. St. Rep. 268) ; *State* v. *Caspare,* 115 Md. 7 (80 Atl. 606) ; *Commonwealth* v. *Emerson,* 165 Mass. 146 (42 N. E. 559) ; *Commonwealth* v. *Sisson,* 178 Mass. 578 (60 N. E. 385) ; *O'Keeffe* v. *City of Somerville,* 190 Mass. 110 (76 N. E. 457, 112 Am. St. Rep. 316, 5 Am. & Eng. Ann. Cas. 684) ; *Sperry & Hutchinson Co.* v. *Temple,* 137 Fed. 992; *State* v. *Sperry & Hutchinson Co.,* 110 Minn. 378 (126 N. W. 120, 30 L. R. A. [N. S.] 966) ; *People, ex rel. Madden,* v. *Dycker,* 72 App. Div. 308 (76 N. Y. Supp. 111) ; *People* v. *Gillson,* 109 N. Y. 389 (17 N. E. 343, 4 Am. St. Rep. 465) ; *People, ex rel. Appel,* v. *Zimmerman,* 102 App. Div. 103 (92 N. Y. Supp. 497) ; *City of Winston* v. *Beeson,* 135 N. C. 271 (47 S. E. 457) ; *State* v. *Dalton,* 22 R. I. 77 (46 Atl. 234, 48 L. R. A. 775, 84 Am. St. Rep. 818) ; *Young* v. *Commonwealth,* 101 Va. 853 (45 S. E. 327).

That the business in which defendant is engaged is lawful in the absence of prohibiting legislation is unquestioned. Whether its characteristics are such in the field of trade and merchandising that it serves no legitimate purpose and is so intrinsically inimical to good morals and public welfare that it may be suppressed by legislation for the common good under the

police power of the State, either by direct prohibition or by licensing it to death, has been a fruitful source of protracted litigation in numerous jurisdictions for many years. In times past the courts of last resort in some 15 or 16 States, and several Federal courts, have held that ordinances and statutes enacted to prohibit the trading stamp business were void as an invasion of the constitutional rights of those engaged in it, while other authorities less numerous are found to the contrary. Of the latter plaintiff cites and especially relies upon as conclusive the comparatively recent case of *Rast* v. *Van Deman & Lewis Co.*, 240 U. S. 342 (36 Sup. Ct. 370, L. R. A. 1917A, 421, Am. & Eng. Ann. Cas. 1917B, 455), followed in the same volume by *Tanner* v. *Little,* 240 U. S. 369 (36 Sup. Ct. 379), and *Pitney* v. *Washington,* 240 U. S. 387 (36 Sup. Ct. 385).

Conceding, as contended by relator, that in the recent cases above cited the United States Supreme Court has held the trading stamp business is of such a character as to be within legislative control and may be suppressed under the police power of the State, the yet serious question remains of whether the statute upon which plaintiff relies is so framed as to be an honest, impartial, and valid exercise of that power in elimination of the condemned practice, to protect public morals, health, and safety for the general good. Its title, above quoted, indicates that purpose to the casual reader, conveying the impression that the use of trading stamps and gift enterprises in merchandising is under condemnation as a demoralizing practice with insidious potentialities inimical to the public welfare, which the act is designed to suppress. Looking to the body of the act to ascertain the method of its enforcement, it is found to be a criminal law of severity providing that:

"The violation of any provision of this act shall be

deemed to be a misdemeanor and is hereby made punishable by imprisonment in the county jail for not to exceed six months or by fine of not to exceed one thousand dollars or both in the discretion of the court." Section 6 (3 Comp. Laws 1915, § 15060).

Further examination of this drastic law discloses that it is not designed to suppress the use of trading stamps in merchandising by the principals, but to eliminate agents, or middlemen, exempting from its eradicating provisions all manufacturers and dealers in merchandise who alone actually use with customers and deal out to the public in the course of their business the trading stamps, or coupons, in stimulation of their trade. This major exemption is carried through the act, with one exception, in substantially the form found in section 1 (§ 15055), which is as follows:

"Gift enterprises and the issuing, furnishing or giving away of trading stamps or any certificate, coupon or writing of similar character other than for redemption or exchange directly by the person, firm or corporation furnishing, issuing or giving away the same for himself or itself and not for or on account of another, are hereby declared to be contrary to the public policy of the State of Michigan, and are hereby prohibited."

The exception referred to is the concluding paragraph of the act (section 10 [§ 15064]), which reserved to those engaged in manufacturing, whether foreign or domestic corporations, companies, or individuals, the right to contract with others for the use and redemption in merchandise of their trading stamps, is as follows:

"This act shall not restrict or limit the right of any manufacturer of any goods or articles of merchandise to place in or upon the packages or wrappers of or for his goods or merchandise, coupons, certificates or tokens, nor the redemption thereof, directly or indirectly."

The substance of this act as elaborately worked out with abundant legal phraseology is a law which forbids the merchants, or dealers in merchandise, from issuing trading stamps or coupons with an agreed redemption value to their customers as evidence of trade, unless redeemable by themselves, making it a crime punishable by heavy fine and imprisonment for third parties to participate in the transaction by any arrangement to redeem them according to the terms under which they are issued, while manufacturers may freely issue them, either redeemable by themselves or any other person.   As related to the suppression of this claimed trading stamp evil under the police power of the State, no logical reason exists for this discriminating classification.   It is stated as a reason that a difference exists in their relations with the public, for the retailer deals directly with the customer, while the manufacturer deals only with the retailer or jobber, but the object of both is the same, and both participate in the transaction which by their joint efforts scatters trading stamps throughout communities amongst customers of the dealers and consumers of the manufacturer's goods to stimulate the business of both.   In itself this discrimination between manufacturer and merchant may be conceded a matter of which defendant could not complain, but the underlying restriction on the dealer out of which it arises does directly concern defendant.   Authority is cited to the effect that, under contracts like this between defendant and its subscribers, instead of it being their agent, they become agents of the trading stamp company to handle and distribute its coupons, or stamps, for it to redeem at a profit.   In a sense, as between themselves, the transaction may take that color, but such is not their relation to the public, for whose protection this law purports to have been enacted.   In the transaction by which the stamps are put afloat the stamp compa-

ny only comes in contact with the consumer, or buying public, as the representative of the merchant, to redeem the trade tokens which he has issued in connection with sales to his customers under an agreement by him with them that they will be redeemed in merchandise for a stated value. It is patent that the merchant is the major, and vitally essential, factor in the trading stamp business, without whose participation it could not exist as now constituted. If he was prohibited from practicing that method of stimulating trade, or declined to adopt it, all trading stamp companies and agencies would speedily die a natural death; but with them prohibited and totally eliminated the dealers, if unrestrained, could and presumably would continue the use of trading stamps, and issue them to the buying public to tempt customers in the same manner as before, with the same alleged baneful influence against good morals and public welfare. In the selective draft which this law makes from those engaged in trading stamp activities, such as are vitally essential to the existence of the business are exempted. If its suppression for the public welfare was the moving consideration for the law, a reversal of the plan of selection would seem to furnish a simple solution of the problem.

So long as the use of trading stamps by dealers to draw custom is countenanced and sustained as a lawful practice, it is difficult to discern any difference, in principle, whether in consummation of the transaction the merchant who negotiates it, and issues to his customers such "lure to improvidence" under a guaranty of redeemable value, redeems the stamp himself or has some one redeem it for him. As is said in *People, ex rel. Madden,* v. *Dycker, supra:*

"Just what there is in the thing prohibited, differing from the thing expressly authorized, that makes it inimical to the public welfare and general safety, does not appear."

In *People, ex rel. Appel,* v. *Zimmerman, supra,* the court had under consideration a statute similar in the above particulars to Act No. 244. The following views upon that feature of the act are not inapplicable here:

"There is another infirmity in the statute which we apprehend renders it invalid. By subdivision 5, as already noted, the business of dealing in trading stamps is reserved for the merchant or manufacturer. This creates a preferential class. The vice, it seems, is not in alluring one to buy by promises of a gift, but in permitting a promise to be fulfilled by another than the seller. It is a narrow ledge for the distinction to rest upon, when in one instance the transaction is subject to legislative control to the extent of confiscation, while in the other it goes without let or hindrance. If the seller, by arrangement with a reasonable company, secures the performance of the agreement, and the arrangement is satisfactory to the buyer, it would seem that such a plan ought not to be made a crime, while redemption by the merchant is deemed an honest transaction. The statute is not founded on the moral plane pretended, but belongs to that class of legislation designed to drive out of business a successful competitor."

In the *Rast Case,* disagreeing with preceding authorities which upheld the trading stamp business as an honest and legitimate commercial method of advertising by giving discounts to customers, with which legislation might not interfere, the court said that:

Such schemes "rely on something else than the article sold. They tempt by a promise of a value greater than that article, and apparently not represented in its price, and it hence may be thought that thus by an appeal to cupidity to lure to improvidence. This may not be called in an exact sense a 'lottery,' may not be called 'gaming'; it may, however, be considered as having the seduction and evil of such, and whether it has may be a matter of inquiry and of judgment that it is finally within the power of the legislature to make."

So considered, the court held that, where such conditions were presented, and the legislature so determined, it might suppress the found evil by appropriate legislation under the comprehensive police power of the State because against good morals and inimical to the public welfare. This act in outline has that general tone. It is skilfully drawn and well worded to that end, but for its interspersed exceptions which approximate what is sometimes called a "joker" in legislation, serving to defeat the otherwise prominently indicated object of the act. It is in that particular of the class of legislation which the court said in *Chaddock* v. *Day*, 75 Mich. 527 (42 N. W. 977, 4 L. R. A. 809, 13 Am. St. Rep. 468), "should receive no encouragement at the hands of the courts."

It is further contended for plaintiff that, if invalid as to firms, individuals, etc., the act should be sustained against defendant as a valid limitation upon its corporate powers under the reserved authority of the legislature to alter, amend, or repeal all corporate laws; it being particularly stated in section 9 (§ 15063) of the act that it is intended as a limitation upon the power "of any person, firm or corporation" doing business in the State, and to be held "valid to the fullest extent possible" if found invalid as to any class, feature, etc.

We do not deem it necessary to follow or to disagree with the able argument in plaintiff's brief upon the legislative authority and control over corporations both foreign and domestic, and its reserve power to amend or repeal such legislation, provided it is effected by an appropriate enactment for that purpose distinctly evidencing such intent under a proper title.

If the act were given force in that view, it would seem to amount to an amendment of the corporate laws which, it is argued with citation of authority, may be done by implication in a separate act so operating.

While that proposition might be questioned under the restrictions of section 21, art. 5, of our present Constitution, conceding it as claimed, that object must at least be fairly indicated in the title of the act, and the intent made plain by its provisions. This is a prohibitory act naming together without distinction, both in its title and paragraphs throughout, firms, corporations, and individuals, or persons, with no separate section or provision devoted to corporations. The statement of intent in section 9 is but declaratory of a recognized judicial rule of construction. Of such a provision it is said in *Alabama, etc., Transportation Co.* v. *Doyle*, 210 Fed. 173:

"It cannot be that, if the unconstitutional portions are so interwoven with the whole purpose and operation of the statute that they are not fairly separable, the act may nevertheless be enforced in a form in which it was not passed and in which it might not be recognized by its framers."

· And the same could be said with even greater probability of the members of the legislature who voted for its passage. The court there further pointed out, in the act under consideration, as reason for rejecting the contention that it could be sustained as a limitation on the power of corporations, infirmities closely analogous in many particulars to those appearing here, in part as follows:

"This act does not purport to regulate corporations. There are no separate sections relating to corporations which can be preserved and enforced. Particularly as relates to dealers, every restriction is carefully applied to corporations, and partnerships and individuals. If only corporate dealers were affected, the statute would be evaded so easily as to make it worthless."

For the foregoing reasons we are impelled to the conclusion that the discriminating scope of this act, as limited and emasculated by the exceptions running

through it, the nature and object of which are not disclosed in its title, is not a constitutional exercise of the police power of the State upon which it purports to be predicated.

The judgment of ouster prayed for by the attorney general is therefore denied.

STONE, OSTRANDER, BIRD, MOORE, and BROOKE, JJ., concurred. KUHN, C. J., and FELLOWS, J., did not sit.