*In re* APPORTIONMENT OF STATE LEGISLATURE—1964.
JUNE 22, 1964.

STATES — DISTRICTING AND APPORTIONING OF LEGISLATURE — EQUAL POPULATION.

> Plan for districting and apportioning State Legislature whereby difference of population between largest and smallest senatorial district is 2,027, and representative district is 3,082, most nearly complies with constitutional requirements that districts in both houses be as nearly equal in population as is practicable is ordered to be placed in effect for primary and general elections of 1964 irrespective of any challenge by an elector, pursuant to determination of the supreme court of the United States, per KAVANAGH, C. J., and BLACK, SMITH, O'HARA, and ADAMS, JJ., and pursuant to the exercise of the Court's general equity powers, rather than powers specifically conferred by the State Constitution with respect to such matters by SOURIS, J. (US Const, Am 14; Mich Const, 1963, art 4, §§ 1–6).

DETHMERS and KELLY, JJ., dissenting.

See 372 Mich 418, 461, and 480. Submitted March 3, 1964. (Calendar No. 95, Docket No. 50,705.) Following orders, entered June 17, 1964, modifying and vacating previous orders and directing commission to devise apportionment plans for election of State legislature in conformance with State and Federal Constitutions and guidelines set forth in recent United States supreme court decisions, the commission again failed to agree. Resubmitted June 20, 1964. Various petitions and apportionment plans submitted, one plan by Richard H. Austin, Ivan E. Brown, Henry J. Dongvillo, and A. Robert Kleiner, incor-

REFERENCES FOR POINTS IN HEADNOTE
18 Am Jur, Elections § 17.
Inequality of population or lack of compactness of territory as invalidating apportionment of representatives. 2 ALR 1337.

porating by reference an alternate plan submitted by Austin and Kleiner May 11, 1964, during pendency of this action, one plan by Wilber M. Brucker, Ralph E. Huhtala, and Alfred O. LaPorte, and one plan and an alternate plan by William F. Hanna. Order entered June 22, 1964, directing the commission on legislative apportionment to adopt the Austin-Kleiner alternate plan, to publish it forthwith, and to put it into effect for 1964 elections.

KAVANAGH, C. J.   On June 15, 1964, in the case of *Reynolds* v. *Sims,* 377 US 533 (84 S Ct 1362, 12 L ed 2d 506)* the United States supreme court in the majority opinion of Chief Justice Earl V. Warren said (pp 568, 577):

"We hold that, as a basic constitutional standard, the equal protection clause requires that the seats in both houses of a bicameral State legislature must be apportioned on a population basis.    *    *    *

"By holding that as a Federal constitutional requisite both houses of a State legislature must be apportioned on a population basis, we mean that the equal protection clause requires that a State make *an honest and good faith effort to construct districts, in both houses of its legislature, as nearly of equal population as is practicable.*"    (Emphasis added.)

On June 17, 1964, this Court entered an order directing the commission on legislative apportionment to proceed to adopt a plan for districting and apportionment of the senate and house of representatives in accordance with the constitutional requirements and guidelines provided by the United States supreme court in *Reynolds* v. *Sims,* 377 US 533 (84 S Ct 1362, 12 L ed 2d 506) ; *WMCA, Inc.,* v. *Lomenzo, Secretary of State,* 377 US 633 (84 S Ct 1418, 12 L ed

---

* 32 LW 4535.—REPORTER.

2d 568); *Maryland Committee for Fair Representation* v. *Tawes, Governor,* 377 US 656 (84 S Ct 1442, 12 L ed 2d 595); *Davis* v. *Mann,* 377 US 678 (84 S Ct 1453, 12 L ed 2d 609); *Roman* v. *Sincock,* 377 US 695 (84 S Ct 1462, 12 L ed 2d 620); and *Lucas* v. *Forty-Fourth General Assembly of Colorado,* 377 US 713 (84 S Ct 1472, 12 L ed 2d 632), decided June 15, 1964, requiring that the districting and apportionment of both houses of State legislatures shall be as nearly as practicable on an equal population basis. The commission was allowed until 5 p.m., Friday, June 19, 1964, to adopt a plan in accordance with said constitutional requirements. The order provided that, "In the event the commission is unable to agree upon a plan, each member of the commission, individually or jointly with other members, may submit additional proposed plans to this Court within the time limit of 12 noon, Saturday, June 20, 1964."

The Court is now advised that the commission on legislative apportionment did not reach an agreement. Various of its members, jointly and severally, have filed plans with this Court—3 proposed plans for the districting of the Michigan senate and 4 proposed plans for the districting of the Michigan house of representatives.

Analysis of the senate plans reveals the largest and smallest deviation from the average district of 205,895 to be as follows:

|  | SENATE | | *Difference Between Largest and Smallest* |
|---|---|---|---|
|  | *Largest* | *Smallest* | *Smallest* |
| Austin-Kleiner | 207,094 | 205,067 | 2,027 |
| Brucker-Huhtala-LaPorte | 216,118 | 200,121 | 15,997 |
| Hanna | 232,384 | 160,918 | 71,466 |

Analysis of the plans for the house reveals that the largest and smallest deviation from the average house district of 71,127 under each of the plans is as follows:

|  | HOUSE | | *Difference Between Largest and Smallest* |
|---|---|---|---|
|  | *Largest* | *Smallest* | *Smallest* |
| Austin-Kleiner | 72,200 | 69,118 | 3,082 |
| Hanna Plan #15 | 98,719 | 50,459 | 48,260 |
| Original Hanna-Brucker Plan | 101,120 | 48,395 | 52,725 |
| Plan #16 | 98,719 | 48,395 | 50,324 |

This Court, after examining each of the plans, finds as a fact that all plans to some degree, and of manifest necessity, cross or recross county, city or township lines.

The Court also finds as a matter of fact based upon the certification of James M. Hare, secretary of State for the State of Michigan and chief elections official of the State, that ample time exists for holding orderly primary and general elections for the State legislature in the event a plan is ordered placed in effect by Thursday, June 25, 1964.

The Court further finds that 1 plan only constitutes a plan for districting and apportioning the senate and house of representatives in accordance with the constitutional requirements set forth by the United States supreme court on June 15, 1964, requiring districts in both houses to be of equal population as nearly as practicable.

The Court finds that the so-called Austin-Kleiner plan filed May 11, 1964, and resubmitted by reference June 20, 1964, purports to be a plan for districting and apportioning of both houses of the Michigan legislature based upon districts containing population as nearly equal as practicable.  By such plan

districts in both the senate and house of representatives are composed of territory containing population as equal as the 1960 Federal decennial census permits. Subject to this controlling objective of substantially equal population, and to the extent it would not be subordinated, districts by such plan are formed as compact, contiguous, and regular in shape, and do follow county, city, and township boundaries as nearly as practicable.

With respect to the minimum percentage of the State's population capable of electing a majority of the senate—a consideration deemed important by the United States supreme court—the figure is 52.5%.

With respect to the house of representatives, the minimum percentage of the State's population sufficient to elect a house majority is also over 50%—specifically, 50.6%.

While it is not possible to develop detailed constitutional requirements, there can be no question as to the overriding requirement—"districts, in both houses of its legislature, as nearly of equal population as is practicable." The Austin-Kleiner alternate districting and apportionment, filed with this Court on May 11, 1964, most nearly complies with said constitutional requirement.

Therefore, it is ordered that the commission on legislative apportionment be, and it hereby is, directed to adopt and publish forthwith, as provided in section 6 of article 4 of the Constitution of the State of Michigan of 1963, the aforesaid Austin-Kleiner plan, which plan shall be placed in effect for the primary and general elections of 1964 irrespective of whether or not said plan shall be challenged upon the application of an elector pursuant to the final paragraph of said section 6 of article 4.

Considering the limited time which remains for the giving of notices of 1964 legislative elections, no

motion or application for a stay of this order will be entertained by this Court.  Any person deeming himself aggrieved by this order may, for the purposes and requisites of USSC Rules 18, 50, and 51,* proceed to move or apply forthwith for a stay pursuant to said Rules, in the same manner as if he had previously and vainly moved or applied to this Court for such stay.

BLACK, SMITH, and ADAMS, JJ., concurred with KAVANAGH, C. J.

O'HARA, J. (*concurring*).  With recorded reluctance I join in the direction to the apportionment commission to adopt and publish the plan designated the alternate Austin-Kleiner plan for the 1964 legislative elections.

I am mandated by the United States supreme court to accept the principle of "equality of population as nearly as practicable" as the pre-eminent test.  With this principle I am entitled to equate the maintenance of the territorial integrity of political subdivisions. To what extent I do not know, except as that extent is suggested in *WMCA, Inc.*, v. *Lomenzo, Secretary of State*, 377 US 633 (84 S C 1418, 12 L ed 2d 568).

With this as the only existing guideline I must accept it for the imminent 1964 legislative elections and thus take the action I do here.

I am not in accord with the concept that both houses of a bicameral State legislature cannot be apportioned to recognize area interests in the legislature of a State of such divergent socio-political complexion as ours.

I am in specific disagreement with the repudiation of the so-called "Federal analogy" argument.  It

* FCA, Court Rules, part 2, pp 183, 198, 199; 28 USCA, Rules, 1963 pocket part, pp 12, 13, 35.—REPORTER.

strikes, in my view, at the very heart of the check and balance system.

I must accept the directive of the United States supreme court as I understand it. That is to subordinate all other considerations to the equality of population as nearly as practicable. Hopefully, there will be determinative litigation that may well more nearly define the relationship of equality of population with those other historic factors that have been considered in legislative apportionment of the several States.

I concur with the majority order of the Court.

Dethmers, J. (*dissenting*). Recognizing that the United States supreme court decisions of June 15, 1964, require that the districting and apportionment of both houses of State legislatures shall be as nearly as practicable on an equal population basis, we are convinced that, subject to that limitation, the decisions did not invalidate the requirements which are not violative thereof contained in article 4, § 6, of the Michigan Constitution of 1963 governing legislative apportionment and districting.

A role of the supreme court of the United States is to interpret, construe, and apply the provisions of the Constitution of the United States, including those of its Fourteenth Amendment. The role of the Supreme Court of Michigan is dual in that it must perform that same function, in the light of United States supreme court decisions, and, in addition, to the extent not inconsistent therewith, interpret, construe, and apply the provisions of the Constitution of the State of Michigan.

We believe that the so-called Brucker, Huhtala, LaPorte plan, submitted to this Court on June 20, 1964, dividing each of the congressional districts most recently constituted by act of the legislature

into 2 State senatorial districts and districting and apportioning the house according to their plan, previously submitted by them to this Court on February 14, 1964, as House Plan No 9, complies most accurately, subject to United States constitutional requirements as declared by the United States supreme court on June 15, 1964, to the requirements of the Michigan Constitution of 1963 and, at the same time, as the United States supreme court requires, districts and apportions as nearly as practicable on an equal population basis, considering what the practicabilities thereof are under the requirements of the Michigan Constitution of 1963. Notable among the latter requirements are those of creating districts of regularity in shape, following, to the maximum extent possible, county, city and township lines, with due regard for the integrity of the boundaries thereof. We hold accordingly.

KELLY, J., concurred with DETHMERS, J.

SOURIS, J. (*concurring, June 22, 1964*). I concur in the result reached by the Court's order entered today reserving the right, however, to set forth my reasons for this special concurrence in an opinion to be filed.

SOURIS, J. (*June 24, 1964*). While concurring in the Court's order of June 22, 1964, requiring the apportionment and districting of the State's legislative power in accordance with a plan filed on May 11, 1964, by legislative apportionment commissioners Austin and Kleiner,* I dissent from so much of that

---

* Following release on April 10, 1964, of the opinions in *In re Apportionment of Legislature—1964*, 372 Mich 461, Commissioners Austin and Kleiner, on May 11, 1964, petitioned the Court for leave to file an alternate districting and apportionment plan, attached to

order which expressly or impliedly acknowledges the continuing validity of the first 6 sections of article 4 of the Constitution of 1963 except for section 1, the first paragraph of section 2, and that portion of section 3 which reads:

"The house of representatives shall consist of 110 members elected for two-year terms from single-member districts apportioned on a basis of population."

Last April I concluded that the 80-20 formula contained in article 4 for the apportionment and districting of senate seats "expressly dilutes the importance of population in densely populated areas and enhances it in those areas sparsely populated" and that the formula devised for apportioning and districting house seats "likewise debases population as a determinative factor in apportionment of legislative power." *In re Apportionment of Legislature —1964,* 372 Mich 461, 468. It was then my conclusion that:

"The blunt truth is that inequality is built into the legislative apportionment provisions of the Constitution of 1963 in flagrant disregard of the principles of equality required by the Fourteenth Amendment." 372 Mich at 468.

The United States supreme court now has reached the same conclusion. See opinion of reversal and remand to the United States district court for the Eastern district of Michigan in *Marshall* v. *Hare* (1964), 378 US 561 (84 S Ct 1912, 12 L ed 2d 1036) handed down June 22, 1964.

Having concluded that the apportionment and districting provisions for both the senate and house

the petition, which eliminated those features of previously filed plans found constitutionally objectionable in 2 of the Court's April opinions. On May 13th, this Court granted their petition to file the alternate plan. It is that alternate plan which the Court on June 22d designated for adoption by the legislative apportionment commission.

of representatives were violative of the Fourteenth Amendment, it was my conclusion (as it was United States District Judge Stephen J. Roth's conclusion, in dissent, in *Marshall* v. *Hare* [1964], 227 F Supp 989, 1004, reversed and remanded, *supra*) that section 6 of article 4 which established the commission on legislative apportionment to "district and apportion the senate and house of representatives according to the provisions of this Constitution" likewise had to be held void. Section 6, in my view, was so dependent upon the continuing validity of the preceding sections by which the commission's duties were specified and expressly limited, that it could not survive alone. I could not then, and cannot now, but conclude that except as indicated above, the first 6 sections of article 4, as they relate to the apportionment of legislative power, are inseparable and that the constitutional invalidity of 1 or more of said sections invalidates the remainder. *Campau* v. *City of Detroit,* 14 Mich 276, and *People, ex rel. Attorney General,* v. *Sperry & Hutchinson Co.,* 197 Mich 532, 542 (LRA 1918A, 797). It is incomprehensible to me that the people of this State in their adoption of the Constitution of 1963 would have intended to grant a commission composed of 8 members selected by the 2 major political parties in the State from 4 specifically designated areas of the State the power of apportionment and districting of the State's legislature without the very specific and rigidly limiting directions unconstitutionally and ineffectually sought to be imposed upon the commission by the preceding sections of article 4.

It was my belief in April, as it is now, that absent valid constitutional delegation of legislative apportionment and districting duties the legislature has the inherent power, as said by Mr. Chief Justice Warren for the supreme court in *Maryland Committee for Fair Representation* v. *Tawes, Governor*

(1964), 377 US 656, 675, 676 (84 S Ct 1442, 12 L ed 2d 595) (32 LW 4573, 4578), "to enact at least temporary reapportionment legislation pending adoption of State constitutional provisions relating to legislative apportionment which comport with Federal constitutional requirements."

Were there time yet remaining, as there was in April, I would defer to the legislature in apportioning and districting the State's legislative power for the forthcoming year. However, now too little time remains for such nice regard for the fact that "legislative reapportionment is primarily a matter for legislative consideration and determination." *Reynolds* v. *Sims* (1964), 377 US 533, 586 (84 S Ct 1362, 12 L ed 2d 506) (32 LW 4535, 4550). Certainly, in the interest of avoiding disruption of the election process, and indeed of the legislative process itself, considering our previous declarations of invalidity of our prior Constitution's apportionment provisions (the 1952 amendments to sections 2 and 4 of article 5 of the Constitution of 1908) pursuant to which the current legislature was elected (see *Scholle* v. *Secretary of State,* 367 Mich 176, 180, 232, certiorari denied, *sub nom, Beadle* v. *Scholle,* June 22, 1964, by the United States supreme court, 377 US 990 [84 S Ct 1901, 12 L ed 2d 1043] [32 LW 3440]), it is our judicial responsibility to order now, in time for the forthcoming primary and general election,* a provisional reapportionment plan for this year's legislative elections, leaving for the legislature so reapportioned and elected or to the people themselves by constitutional initiative or referendum processes the task of fashioning for the future a periodic re-

---

* As noted in the Court's opinion of June 22d, the secretary of State for the State of Michigan and chief election official of the State, has certified to this Court that ample time exists for holding orderly primary and general elections for legislative offices provided an apportionment and districting plan is adopted by June 25, 1964.

apportionment plan in conformance with the requirements of the Fourteenth Amendment as construed by the United States supreme court. Such indeed was the procedure approved by the United States supreme court in *Reynolds* v. *Sims, supra,* and impliedly approved in *WMCA, Inc.,* v. *Lomenzo, Secretary of State* (1964), 377 US 633 (84 S Ct 1418, 12 L ed 2d 568) (32 LW 4551); *Lucas* v. *Forty-Fourth General Assembly of the State of Colorado* (1964), 377 US 713 (84 S Ct 1472, 12 L ed 2d 632) (32 LW 4557); *Maryland Committee for Fair Representation* v. *Tawes, Governor, supra; Davis* v. *Mann* (1964), 377 US 678 (84 S Ct 1453, 12 L ed 2d 609) (32 LW 4579); and *Roman* v. *Sincock* (1964), 377 US 695 (84 S Ct 1462, 12 L ed 2d 620) (32 LW 4583).

Fortunately, we in Michigan have the benefit of the Austin-Kleiner plan for prompt adoption by this Court in the exercise of its general equity powers. It is significant to note at this point that no objection has yet been made to the plan's provisions except that its design is a political gerrymander and that it accomplishes greater population equality than some regard is required by the United States supreme court's recent decisions applying the Fourteenth Amendment's equality clause to legislative apportionment matters. The claim of political gerrymander significantly is unsupported by even the barest allegations of fact. The other claim, that we are not compelled to render equality so equally, does not persuade me that something less merits our choice.

I have joined in the Court's order requiring the forthcoming legislative elections to be conducted in districts set forth in the alternate Austin-Kleiner plan and the State's legislative power to be apportioned as provided therein, not pursuant to any of the provisions of section 6 of article 4 of the Constitution of 1963, but rather in exercise of this

Court's general equitable power to provide by judicial decree a provisional legislative reapportionment pending valid legislative or constitutional enactments providing for periodic reapportionment. Furthermore, I reaffirm my earlier finding that, except as stated in the first paragraph of this opinion, the first 6 sections of article 4 of the Constitution of 1963 are void.